UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | | |
|---|---|---|
| JACQUELINE T. BARTOLOME, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-712 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On March 17, 2006, plaintiff filed her application for benefits. The date she filed the application was her alleged onset of disability date. (A.R. 217-19). Her claim was denied on initial review. (A.R. 70-74). On November 5, 2008, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 25-68). On December 30, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 12-23). On June 25, 2009, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

On August 3, 2009, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. The three issues raised by plaintiff are as follows:

1. The ALJ "lacked valid reasons to reject claimant's testimony;"

>   2. The ALJ failed to give adequate weight to the opinions of a treating physician and a treating psychologist; and
>
>   3. The ALJ failed to incorporate plaintiff's psychological limitations into the hypothetical question that he posed to the vocational expert (VE).

(Plf. Brief at 2, docket # 7). I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73.

"If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from March 17, 2006, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after March 17, 2006. (A.R. 14). Plaintiff had the following severe impairments: "status post [August 2000] subtotal thyroidectomy [] with vocal cord and fold impairment (paralysis) with weak speech volume; sleep apnea; and [an] adjustment disorder with panic attacks." (A.R. 14). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with lifting/carrying ten pounds occasionally; standing/walking up to two hours in an eight-hour workday; sitting up to six hours in an eight-hour workday; never climbing ropes,

>ladders or scaffolds; occasionally climbing ramps and stairs; frequently balancing; and occasionally stooping, kneeling, bending, twisting, crouching and crawling. The claimant is limited to speaking only short sentences in quiet environments; and needs to avoid moderate exposure to fumes, odors, gases and unprotected heights; and avoid concentrated exposure to temperature extremes.

(A.R. 20). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 20-21). Plaintiff was unable to perform her past relevant work. (A.R. 22). She was 44 years old on the date of her alleged onset of disability and 47 years old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 22). Plaintiff has more than a high-school education and is able to communicate in English. (A.R. 22). The transferability of jobs skills was not material to a disability determination. (A.R. 22). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were 5,200 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing.[1] (A.R. 61-63). The ALJ found that this constituted a significant number of jobs. Using Rule 201.26 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 12-23).

1.

Plaintiff argues that the ALJ "lacked valid reasons" to reject her testimony. (Plf. Brief at 13-17; docket # 9, Reply Brief at 4-5). Upon review, I find that the ALJ provided a more than

---

[1]The ALJ noted that if plaintiff's transferable work skills involving billing and balancing accounts were considered, there would be more than 14,000 additional semi-skilled jobs that the hypothetical person would be capable of performing. (A.R. 22).

adequate explanation why he found that plaintiff's testimony was not fully credible and that his factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Payne v. Commissioner*, 402 F. App'x 109 (6th Cir. 2010). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly

and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

The ALJ provided a lengthy and detailed explanation why he found that plaintiff's testimony regarding her functional limitations was not fully credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In April of 2006, the claimant stated that she had difficulty speaking along with [a] breathing problem that had her gasping for air even when talking and sitting down. She stated that she avoided climbing stairs, could not walk more than a few feet at a time, became anxious when she had trouble breathing, and did not stop working until March 2006 (Exhibit 2E)[A.R. 245]. In May 2006, the claimant stated that she cared [for] personal needs but needed to rest between tasks to catch her breath, prepared meals three to four times a week, folded laundry, drove, was able to leave home alone, shopped with her husband every two weeks, handled her finances without difficulty, and visited others. She stated that sometimes people could not understand her speech and she had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing stairs, competing tasks, and concentrating. The claimant denied having problems seeing, remembering, understanding, following directions, using hands, [and] getting along with others (Exhibits 4E & 14F)[A.R. 260-67, 659-61]. In June of 2006 the claimant stated that she got along very well with her family and had a couple very close friends; and spent most of her time reading, watching television, or doing light household chores including cooking and washing dishes (Exhibit 6F)[A.R. 568].
>
> At the hearing, the claimant testified that she stopped working/quit her job in 2006 because she could not keep up with the call volume of the job. She testified that since her surgery in 200[0] she has restricted air flow to her lungs, and a very soft voice that is difficult to hear with background noise. The claimant denied having any amplification device or implant for her voice. She testified that talking while moving was difficult, and cold weather caused her to become more short of breath. [T]he claimant agreed that Dr. Bastian allowed her to work four days a week with Wednesdays off to rest her voice when she first returned to work after her surgery, and then in 2006 allowed her to work five days a week. When asked about her activities of daily living, the claimant testified that she left her house once or twice a week and drove but did not have any hobbies or interests.

> The undersigned notes that at the hearing that lasted for an hour, the claimant spoke in complete sentences and her speech was easily understood. At times the claimant wheezed on inspiration.
>
> The record clearly indicates that the claimant worked as a customer service representative with talking on the phone all day for six years after her impairment resulting surgery. She does not have any physical limitations but is limited by her breathing problems. The claimant participated in very little mental health therapy/treatment.
>
> In January 2006 Dr. Bastian cleared the claimant for work five days a week. [A.R. 615] In March 2006 Dr. Bastian reported that the claimant was essentially limited to sedentary work since her breathing became worse with activity [A.R. 617]. Dr. Hernandez reported in March 2006 that the claimant spoke with a hoarse voice and had some problems breathing when talking even though not in respiratory distress [A.R. 521]. In June 2006, Dr. Mulder opined that the potential for the claimant becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis was fair, and she may benefit from a vocational rehabilitation program to help her explore work activities that do not involve vocalization or extensive physical exertion [A.R. 570]. Dr. Bastian reported in January 2007 that the claimant did not need any device to speak but had a soft and weak voice that was heard only in qui[et] surroundings, and could not be sustained [A.R. 598]. In July 2008 Dr. Bra[]man reported that the claimant did not need any device to speak, but could not sustain speech and could be barely heard [A.R. 663]. In October 2008 Dr. Bastian reported that the claimant had a functional voice for basic brief communication and did not require any speech devices [A.R. 678].
>
> In sum, the claimant is able to perform sedentary work with never climbing ropes, ladders or scaffolds; occasionally climbing ramps and stairs; frequently balancing; and occasionally stooping, kneeling, bending, twisting, crouching and crawling. She is limited to speaking only short sentences in quiet environments; and needs to avoid moderate exposure to fumes, odors, gases and unprotected heights; and avoid concentrated exposure to temperature extremes.

(A.R. 20-21; citations to record supplied). The ALJ gave a more than adequate explanation why he found that plaintiff's testimony was not fully credible. *See Rogers v. Commissioner*, 486 F.3d 234, 247-49 (6th Cir. 2007). The accusation that the ALJ applies a "sit and squirm" test (Plf. Brief at 14) is often raised when the ALJ's opinion includes a statement regarding his or her personal observations. *See Lucido v. Commissioner*, 109 F. App'x 715, 716 (6th Cir. 2004); *Harris v. Heckler*, 756 F.2d 431, 439 (6th Cir. 1985). These challenges are almost never meritorious, and this

is no exception. Like any other trier of fact, the ALJ is allowed to rely on his or her personal observations of a witness as an aid to determining credibility. The ALJ's ability to do so gives a unique perspective on the claimant's credibility and is a major reason for the deference accorded to the ALJ's findings. Among other things, the ALJ observed that the hearing lasted for more than an hour and plaintiff spoke in complete sentences and was easily understood. (A.R. 21). It is well established that the ALJ cannot rely *solely* upon his observations at the hearing in resolving a claimant's subjective complaints. *See Weaver v. Secretary of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983). However, it is equally well established that an ALJ "may distrust a claimant's allegations of disabling symptomology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990); *see Lucido v. Commissioner*, 109 F. App'x at 716-17. Dr. Bastian, a treating physician, had stated that plaintiff's exertional limitations did not prevent her from performing sedentary work. *See Infantado v. Astrue*, 263 F. App'x 469, 475-76 (6th Cir. 2008) (treating physician's opinion indicating that the claimant had greater capabilities than she claimed in her hearing testimony provided substantial evidence supporting the ALJ's credibility determination). Plaintiff's daily activities undercut her testimony that she had greater functional limitations. *See Walters v. Commissioner*, 127 F.3d at 532; *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Perschka v. Commissioner*, 411 F. App'x 781, 787 (6th Cir. 2010). I find that the ALJ's gave a more than adequate explanation why he found that plaintiff's testimony was not fully credible and that his factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

**2.**

Plaintiff argues that the ALJ failed to give sufficient weight to the opinions of treating psychologist Marie McKay, Psy.D., and treating physician Paul Braman, M.D. (Plf. Brief at 7-13; Reply Brief at 2-4). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). A treating physician or psychologist's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment, because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2); *see Allen v. Commissioner*, 561 F.3d at 652.

"Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d at 390. A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory

statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 570 (6th Cir. 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d at 875-76; *see Allen v. Commissioner*, 561 F.3d at 651; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

    A.  <u>Psychologist McKay</u>

The ALJ provided a more than adequate explanation why he found that the opinions offered by Psychologist McKay were entitled to little weight. The ALJ noted that this psychologist had provided counseling for about eight months. The counseling occurred between September 26, 2007, and April 16, 2008, and consisted of ten or fewer brief sessions. The records offered in support of McKay's opinions consist of three pages of progress notes from six counseling sessions. (A.R. 569-61). These notes record plaintiff's subjective complaints, but are not supported by any objective test results. An opinion that the plaintiff is disabled based on the claimant's self-reporting "is never entitled to controlling weight or special significance." *Ferguson v. Commissioner*, 628 F.3d 269, 274 (6th Cir. 2010). The ALJ observed that the restrictions Psychologist McKay suggested were unsupported and inconsistent with plaintiff's daily activities and the work she had performed during the years after her August 2000 surgery:

> On September 15, 2008, Dr. McKay reported that she provided psychological services for the claimant for ten sessions (treatment records show only 6 sessions) between September 26, 2007 and April 16, 2008. [A.R. 659-61]. Dr. McKay reported that with a person who is listening, or with a person aware of her challenges and making accommodations, the claimant is able to communicate and be heard; but in work settings she was not able to participate in conversations, sustain speech, be heard or hear others. Dr. McKay reported that the claimant also demonstrated and reported a great deal of anxiety around transportation issues fearing a situation in which she would have to communicate with others about her health. Dr. McKay listed the claimant's diagnosis as adjustment disorder with anxiety and depression; and opined that the physical limitations as well as the severe duress a workplace would put on the claimant allow[ed] her to recommend without reservation that she be considered disabled. Dr. McKay listed the claimant's symptoms as anhedonia, sleep disturbance, psychomotor agitation/retardation, decreased energy, and feelings of guilt or worthlessness. Dr. McKay opined that the claimant had marked restriction of her activities of daily living due to the "extraordinary amount of time" she needed to care for her physical needs, prepare meals, and get dressed/undressed; and marked difficulties with social functioning due to her limited ability to speak. Dr. McKay further opined that the claimant had extreme difficulties maintaining concentration, persistence and pace because her physical health caused her to take an extraordinary length of time to complete tasks; and had four or

> more episodes of decompensation when her fear of not being heard triggered depression and anxiety (Exhibit 16F)[A.R. 667-73].
>
> When asked specifically about the claimant's work abilities, Dr. McKay reported that the claimant had a poor to no ability to deal with the public and deal with work stresses; and a fair to poor ability to follow work rules and relate to co-workers. Dr. McKay reported that the claimant had a fair ability to interact with supervisors, function independently, maintain attention/concentration, deal with changes in a work setting, and understand, remember and carry out any type of instructions. Dr. McKay also reported that the claimant had a good ability to maintain personal appearance, behave in an emotionally stable manner and relate predictably in social situations; and had an unlimited ability to use judgment (Exhibit 16F)[A.R. 667-73].
>
> Dr. McKay saw the claimant only six to ten times in an eight month period, and gave her opinion several months after last seeing the claimant. There is no evidence to support findings that the claimant cannot follow work rules, relate to co-workers, deal with work stress, interact with supervisors, function independently, maintain attention/concentration, deal with changes in a work setting, or understand, remember and carry out instructions. In fact, the claimant worked for six years after her impairment resulting surgery; and is able to function independently, relate well to friends and family, handle her own finances, leave home alone, drive, do minor household chores, and go shopping. Thus, the undersigned does not give great weight to the opinion of Dr. McKay.

(A.R. 17-18). The ALJ's findings were appropriate and well-supported. I find no violation of the treating physician rule and that the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to Psychologist McKay's opinions.

    B.    <u>Dr. Braman</u>

The weight to be given to testimony or other evidence from a treating physician will vary, depending on the circumstances:

> The advantage that a treating physician has over other physicians whose reports might figure in a disability case is that he has spent more time with the claimant. The other physicians whose reports or other evidence are presented to the administrative law judge might never even have examined the claimant (that was true here), but instead have based their evidence solely on a review of hospital or other medical records. But the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, as is well known, many physicians (including those most likely to attract patients who are

> thinking of seeking disability benefits, *cf.* Seth A. Seabury, Robert T. Reville & Frank Neuhauser, "*Physician Shopping in Workers' Compensation: Evidence from California*," 3 JOURNAL OF EMPIRICAL LEGAL STUDIES 47 (2006)) will often bend over backwards to assist a patient in obtaining benefits. *Black & Decker Disability Plan* [*v. Nord*], 538 U.S. [822,] 832 [(2003)]; *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 917 (7th Cir. 2003), and cases cited there. Moreover, though not in this case, the treating physician is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are.
>
> So the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances. As explained in the accompanying order, the administrative law judge was justified in giving greater weight to the medical evidence that contradicted the treating physician's evidence than to his evidence.

*Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

Plaintiff argues that the ALJ failed to give sufficient weight to Dr. Braman's opinions that plaintiff was disabled, lacked the RFC for sedentary work, and required "complete freedom to rest frequently without restriction." Dr. Braman stated in his initial progress notes that plaintiff was disabled (A.R. 698), and he repeated it on other occasions (A.R. 682-83). On July 10, 2009, Dr. Braman signed an "Exertional Limitation Questionnaire" in which he offered an opinion that plaintiff could not perform sedentary work. (A.R. 665). He also signed a "Rest Questionnaire" in which he offered an opinion that plaintiff required "complete freedom to rest frequently without restriction." (A.R. 664). Braman's questionnaire responses do not contain any explanation of the objective medical basis for his opinions. (A.R. 664-65). The ALJ found that Dr. Braman's opinions were entitled to little weight. (A.R. 17). A claimant's RFC and the ultimate issue of her disability are issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *Coldiron v. Commissioner*, 391 F. App'x 435, 439 (6th Cir. 2010). Dr. Braman's opinions that plaintiff was disabled and lacked the RFC for sedentary work were not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e)(1); *Bass v. McMahon*, 499 F.3d at 511. There is more than substantial evidence

-13-

supporting the ALJ's finding that Dr. Braman's proffered restriction regarding plaintiff's need to rest was inconsistent with the record as a whole. Among other things, the ALJ noted that in January 2006, Dr. Bastian, plaintiff's treating specialist in voice, swallowing, and airway disorders, had cleared plaintiff to work five days a week. (A.R. 21, 615). On March 7, 2006, Dr. Bastian stated that plaintiff's restricted airway made her "essentially sedentary of necessity."[2] (A.R. 21, 540, 617). Dr. Bastian did not agree with Dr. Braman's assertion that plaintiff required complete freedom to rest frequently without restriction. Bastian described plaintiff as having a weak voice and limited airway, which prevented her from doing "anything very active without becoming short of breath." (A.R. 599). Dr. Bastian observed in October 2008 that plaintiff had a functional voice for short conversations in quiet surroundings, but could not use her voice on a sustained basis in competition with background noise. (A.R. 21, 678-79). The ALJ essentially adopted the findings of Dr. Bastian, a specialist, over those of Dr. Braman, which were contradictory and unsupported. I find no violation of the treating physician rule.

**3.**

Plaintiff argues that the hypothetical question the ALJ posed to the VE was deficient because it "failed to incorporate the plaintiff's psychological limitations." (Plf. Brief at 11-13). This argument is a reformulation of plaintiff's attack on the ALJ's findings regarding the weight given to the opinions of Psychologist McKay and Dr. Braman and the ALJ's credibility determination. A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments

---

[2]The ALJ agreed with Dr. Bastian that plaintiff was not capable of performing her past relevant work as a customer service representative, because that job required hours of talking on the telephone each day. (A.R. 540). This was beyond plaintiff's RFC, which was limited to speaking only in short sentences in quiet environments. (A.R. 20).

provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ's hypothetical incorporated the restrictions specified by plaintiff's treating specialist, Dr. Bastian. (A.R. 61-63). The ALJ noted that plaintiff "participated in very little mental health therapy/treatment." (A.R. 21). She had no history of hospitalization for any mental impairment. The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235); *Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."). I find that the hypothetical question posed to the VE was adequate, and that the VE's testimony in response provides substantial evidence supporting the ALJ's decision.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: June 15, 2011           /s/ Joseph G. Scoville
                               United States Magistrate Judge

**NOTICE TO PARTIES**

        Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).